Case number 16-1230. State of Delaware Department of Natural Resources and Environmental Control Petitioner v. Environmental Protection Agency. Ms. Edge for the petitioner. Mr. Dupree for the respondent. Good morning. May it please the Court. Good morning, Your Honors. I'm Valerie Edge, and I'm here on behalf of the Delaware Department of Natural Resources and Environmental Control and the 950,000 citizens it is charged with protecting. Ozone is a colorless and odorless chemical that causes respiratory harm and may also be a factor in premature death along with heart and lung disease. If EPA had not issued the extension year, the Philadelphia area would have been reclassified to moderate non-attainment with the 2008 ozone next. Attainment dates would have changed to it as expeditiously as practicable, but not later than July of 2018, with attainment measured by the years 2015, 16, and 17. Pennsylvania, Maryland, and New Jersey and Delaware would be updating their implementation plans to select measures to achieve reductions and working with upwind states and EPA to address transported emissions. These Clean Air Act required actions would lead to expeditious attainment and improved air quality in Delaware and the Philadelphia area and will actually achieve the next in a way that we can attain and maintain it. Instead, EPA issued the extension year. That extension, coupled with unusually mild weather in 2013 and 2014, when averaged with 2015 instead of 2012, results in air quality data that just measures attainment with the next. EPA chose to interpret this as a trend towards attainment. EPA then proposed to determine that the Philadelphia area attained the next. This finding of attainment will not improve air quality. And now that those unusually mild years have dropped out of the averaging, the Philadelphia area air quality no longer attains the next. Actual air quality measurements in 2016 and 2017 show multiple exceedances of the next, with a high in Delaware this summer of 84 parts per billion against the old, against the 2008 75 parts per billion standard and a measurement of 80 in Brandywine State Park as recently as September 25th, 2017. I didn't think the issues in front of us were the merits of attainment or non-attainment, but I thought they had to do with the process by which the EPA went about granting the extension. I thought that was the threshold issue here. That's correct, Your Honor, but the practical reality of the process has to look to the end result and has to look to... Well, let's talk about the process. We can deal with practical reality later. Yes, sir. What's your argument on... The Court, would you like for me to address the issue of whether Delaware's agreed first or the argument? In other words, Congress gave the administrator the authority to grant a one-year extension, correct? Yes, Your Honor. So why don't you focus on why you think EPA... Yes, Your Honor. ...did not act lawfully in granting that extension? Isn't that your first argument? Yes, but... We've asked for the threshold argument also. I'm sorry, Your Honor? We've also asked you to address, I believe, the question of what your position was before the agency. Would you prefer the threshold question first? That's fine. Delaware did not support EPA's action during the rulemaking and is not prohibited from seeking review. Delaware's comment letter said that EPA's actions made sense under circumstances where an additional year was needed for air quality to be affected by controls, but that was not the case here. Delaware further said that it would like to support EPA's action, but said it would burden Delaware. Delaware also expressed that it thought that EPA was signaling victory and success with this action, but Delaware could not agree. These are not expressions of support. So Delaware said it would like to support the proposal for an extension, and it sought to have clarification that EPA would require the other states in the Philadelphia area to conform with Section, what is it, 10D2? Actually, it said, Your Honor, that Delaware would like to support the action, but the circumstances were not appropriate for an extension year. But the only thing it requested was this clarification. Is that right? It did request the clarification. It was intended to, and I believe was taken by EPA, as to apply if Delaware's request was denied. The tone of Delaware's comments was likely tempered by the friendship between then-EPA Administrator McCarthy, who was a former Environmental Commissioner and Delaware's Air Director. But Delaware did not ask for the extension year and conveyed that it was opposed to it in its letter and in EPA's summaries of Delaware's comments. Besides the tone, where's the language in the letter in which Delaware says they oppose the extension? Delaware believed that it was clear from the entirety of the letter that if you look at it, that these are not the appropriate circumstances. EPA pointed in its response to comments at JA 109, says the commenter argued that Delaware suffers from but does not own this problem and that the EPA proposal to grant a one-year extension would burden the state. Delaware believed that it was sufficiently clear and that with an administrator as familiar with the Clean Air Act and its processes would understand that the letter was opposition. It was also read by EPA in its brief at page 2. That brief demonstrates EPA's understanding that Delaware was opposed to it. It says Delaware, however, objected, instead wanting EPA to reclassify the Philadelphia area as a moderate non-attainment area and thereby impose additional planning and emission controls obligations on all the states in the non-attainment area. EPA, in its brief at 9, again correctly characterized Delaware's comments. After EPA published the proposal, I quote, EPA received two comments opposing the one-year extension of the attainment date for the Philadelphia area. In the first, Delaware stated that it did not believe the extension was appropriate because states other than Delaware had comprised the Philadelphia area had failed to implement the measures needed to attain the 2008 ozone max. All right, so tell us why EPA acted unlawfully when it granted this extension, given that Congress has authorized it to grant extensions. EPA suggests in its brief that it does not matter whether states that receive an extension year are in compliance with their implementation, well, whether their implementation plan is deficient or lacks necessary elements because the state only requires it to be in compliance with whatever plan exists. EPA, in its brief, pointed to the definition of implementation plan, which actually supports Delaware's position rather than EPA. If you read the entire definition of implementation plan, it says, quote, for purposes of this chapter, the term applicable implementation plan means the portion, paren or portions, and paren of the implementation plan or most recent revision thereof, which has been approved under section 7410 of this title or promulgated under section 7410C of this title, or promulgated or approved pursuant to regulations under section 7601D of this title, and, and these are the important words, which implements the relevant provisions, requirements of the chapter. I thought your first argument was that the only way the EPA could grant an extension is if all of the states had asked for it, and all of the states didn't ask for it here, right? That's correct, Your Honor, but I was... But the language of the statute says any state can ask, right? It doesn't say all. The any state... It's any state. The the state in the next subsection refers to the any state. And if the court were to read it as EPA says that any state means any state and is not related to the states in the area and the states that have to be in compliance with the implementation plan, then Hawaii could petition EPA. Why not read it any state in the area can ask? Or rely on the EPA not to accept Hawaii's proposal. Right, to burden Delaware. Or perhaps I should have said Texas or one of the other states who actually do burden Delaware, because the way EPA is reading the statute, it allows a state who's failed to adopt, it's in the implementation area, who's failed to adopt all the necessary procedures, to ask for an extension so that the data is manipulated. And they won't get it. I mean, there's discretion with the administrator. The administrator may... Well, they shouldn't have gotten it in this case, because the actual data is not showing attainment, and this only allows... No, I'm getting to that. I'm focusing on your reading of the statute that it calls for unanimity of a request, and I just don't see that. Any state... You have to read the whole thing yourself, Your Honor. It's a request. It's just a request. It's a request, but it's a request by the people who are impacted, who understand what the obligations are, and who are supposedly fulfilling all of their obligations and are due to get clean air expeditiously. I know, but once a state asks for an extension with the support of the governor or the governor's representative, then the other states in the affected area, the non-attainment area, get a chance to comment, correct? They do, Your Honor. All right. So at that point, EPA has to make a determination whether this request should be granted. Yes. And I understand your second argument, but your first argument is the statutory argument. Yes. And you say the language of the statute is plain. It reads, Your Honor, upon application by any state, the administrator may extend for one additional year, and I'll skip a bit, if the state has complied with all... In other words, if you read it to mean that, the plain structure means that the only state who has to have complied with the requirements and commitments of their plan is the state asking it to apply. To apply. It doesn't mean you automatically get what you ask for, is what EPA or I thought Congress was saying. In other words, we don't want requests from a state that's so out of sync that it's not complying with its own obligations under an EPA SIP, approved SIP or a FIP. All right? Right. And if that state has complied, then EPA will consider whether to grant the application. And you, representing Delaware, make all these arguments as to why the application should not be granted. But the constraints of the statute link the state who's complied with all the requirements with the state who has applied. Well, EPA recognizes that. EPA reads it differently. And you say, well, if it's not plain on its face, even if it's ambiguous, EPA could not reasonably read the statute the way it has. Yes. Because these are co-summa genre, and they're all charged with attaining the NAAQS. And if one of them believes that delaying, they're charged with expeditious attainment, and if they're charged with that and they're implementing everything that they can to achieve that, then the delay that is caused by the extension year, if it's not appropriate, that state should be given the benefit of deciding not to ask for an extension. It's a very limited circumstances under which the statute would ever allow this to happen. It's very prescriptive and appears to be disfavored. And it makes sense that all the states would get to have an action. I mean, the administrator makes the decision, then you have an arbitrary and capricious challenge to make. And you bring that. But this procedural challenge, based on this tortured reading of any. You're really reading it as any state may block a request for an extension. Right. Yeah. That's the way EPA has read it. But if you look at the back of the states, the states have duties and burdens. And we're the ones who are impacted by the result of the process. The EPA should follow the process, the very narrow, very tailored process that the Congress has established. And if you read it straight through, it clearly appears to require only that the state who has asked for the extension must comply with the requirements of the state. The way you phrased it suggests we have not read it through. And we have read it through. I apologize, Your Honor. I didn't mean to do that. Okay. But I think that EPA acknowledges that its reading is not correct when it says that even though only one state need apply, all the rest of them have to apply with the other two conditions. Yeah. Yeah. As I said, we'll get to that. All right. You want to save the rest of your time for rebuttal? Yes, Your Honor. All right. Thank you. Maybe I could start with that. Why isn't the state the state that has applied? Why is it all of the states? Well, Your Honor, I think it – first, I mean, EPA does interpret that the statute requires that all states have, in a multi-state non-attainment area, must have complied with all requirements of their respective SIFs. Yeah, I know that. How do you get that out of the phrase, the state? Well, to my reading of it, the statute says any state in this group can apply for it, and the state in A, the state, that's referring to the state that has applied for it. Well, I think, you know, there's – I think the question the court is asking was not really squared up in this rulemaking. What happened is three of the four states in the Philadelphia non-attainment area applied for the extension. EPA determined that all four states were in compliance with their respective state implementation plans and granted the one extension. Delaware does not challenge the argument that all four states – or it does not challenge the requirement that EPA impose that all four states are in compliance. Where does that come from? I guess what I'm asking for, where in the statute does that requirement come from? I mean, EPA reads it in the statute that all states must have complied with. Yeah, and that's what I'm asking. It doesn't say all states, so where is the language that you look to in the statute to say that all states must have complied? Well, I think it is either if it's – I mean, again, I mean, because this issue was not squared up for the court and all parties to the rulemaking agreed that all states should be in compliance. I think you would either say either EPA used its discretion in granting the extension. So, for instance, you know, the administration – Would there be a problem if we decided that the statute doesn't require all states to be in compliance but just the state that made the request? Do we have a general problem there? Well, I think the – It would be a dictum, I guess. Excuse me? It would be a dictum, wouldn't it? Yes, I think it would, in part because, again, you know, the issue that was squarely raised during the rulemaking is whether EPA could grant an extension upon the request of fewer than all states in a multi-state non-attainment agreement. Is there a policy reason for this? Because, again, you haven't shown me any language in the statute that compels this. I think, you know, the way the statute is constructed is there's two requirements for granting an extension. You know, the second requirement is not contested here, and that's no more than one exceedance of the NAAQS level for the quarter of the year preceding the extension. In other words, that they're close to achieving it. I think we can all agree that's what A5B means. And the other requirement that is at issue here is whether the state has complied with their state implementation plans. And I think it makes sense for extensions to be granted where the states are doing what EPA said they need to do, and secondly, they're close to achieving attainment. So I was wondering whether the statute has to – or could reasonably be read to have two parts. One is the state, any state, a single state in a non-attainment area could apply, and that state must show that it's complying with its SIP. And then EPA has come up with these standards it's going to apply in the exercise of its discretion, whether to grant the application. I think that's certainly one way to look at it. I mean, I think in part – Well, is that what EPA did here? Well, I think what EPA did here – and again, it's a little bit tough to say because this issue was not fully squared up. No, that's a factual question. What EPA did here is it believed that it could only grant an extension if all states in a multi-state non-attainment area had complied with their state implementation. So that's my question. Is EPA reading the statute to have these two steps? One is, who is eligible to apply for an extension? That's what the statutory language is dealing with. How EPA decides whether to grant an extension is not spelled out in the statute. But EPA has determined that it's not going to grant these applications unless it can find that the other states or entities within the non-attainment area are in compliance with their – either EPA state approved steps or a FIP. No? Well, I think you are correct, Your Honor, that you could read 181A5 as only addressing who may apply. Essentially, when it says a state may apply if the state has complied with all requirements in the SIP, that that only refers to the state that applies. I think another reading is that any state in a multi-state non-attainment area may apply for an extension if, in other words, all the states in the non-attainment area have complied with the SIP, with their respective SIPs. Let me ask you, look at the statute, that subsection. It doesn't say all the states, yeah? Yeah. That's my question. I understand that's how you've interpreted it. It's a simple question. Where do you get the phrase, all the states? Where does that concept come from? I think that's the practical interpretation of EPA's view. I think, to be clear, the position between Delaware and all parties to the rulemaking was that in order for EPA to grant an extension, all states in a non-attainment area must be in compliance with their SIPs. So you agree we're not at Chevron Step 1? I think it depends on which part of the statute we're talking about. I'm talking about the subsection we've been discussing for the last couple of minutes. And your brief says the only question before us is what the word any means. Correct. All right. And Delaware really doesn't challenge you on that. But I think that there may be a little more. And I'm just looking at the language of the statute in terms of Judge Griffith's question. And I'm not hearing an answer to that. Are you at Step 1 or Step 2? I think you would likely be at Step 2 if the question is whether or not the statute prohibits a state from applying for an extension if not all states in the non-attainment area are. So you're saying we're at Chevron Step 1 with the phrase any state, Chevron Step 2 with the phrase the state? I think that would be yes. But again, I think it's important to know that during the rulemaking, the question before EPA was about any state. But it was in the state in terms of whether all states had to apply for an extension. And I may be wrong, but subsection 5 to me talks about who is eligible to apply. And it limits the administrator by saying simply no more than one extension. All right? But it's silent as to how the administrator exercises his discretion. But the administrator, as I read the record here, said essentially, I'm not going to grant an extension if any state in the non-attainment area is not in compliance with its SIP plan. Correct, Your Honor. And that is something that the EPA administrator could choose to do. But counsel, you're here before the court. I'm trying to understand, is that a proper reading? And if so, that could be Step 1. If there's some ambiguity in the statutory subsection, then maybe we're at Step 2. And I'm just not clear where we are in your view. And I understood Judge Griffith's question trying to help you on that. Yes, I think, Your Honor, that there are sort of two different ways to look at this. We can either say, you know, upon the applicant. So we're at Step 2. So we're at Step 2. You abandon any Step 1 argument. Well, with respect to whether the state in A5A refers to all the states in the non-attainment area or only the state that is applied, I will concede that we're on a Step 2 analysis. And I think the question is whether EPA's interpretation of requiring all states would be appropriate under a sort of pure statutory analysis, Chevron deference issue in terms of whether they could interpret this ambiguity, or maybe alternatively using their discretion under simply A5, which says they may extend for one year. They simply read in that requirement into the statute itself. I think either approach would have been appropriate. That was not directly addressed in the rulemaking. We've heard you say that three times. Now, are you abandoning the Step 1 argument? I just need to be clear on that. We think the question that was raised by petitioners in terms of who may apply, either any state in a multi-state non-attainment area or all the states, is a Chevron Step 1 issue. Right. So looking at the statute, you say any means any. Yes. Any can be one. End of discussion. Correct, Your Honor. All right. So then the question being raised is, why do you care what the other states are doing under this subsection? Well, the reason EPA cares is – No, you're resisting. I'm looking at what Congress wrote. Correct. The best suggestion I read in the briefs was that when Congress wrote this statute, it was contemplating that the attainment area was within a single state and that it did not contemplate when the attainment area involved more than one state. So the question is, how do we read this? Well, I think there are two options for a pure statutory interpretation. One, you could argue that the A5A, the state, is ambiguous as applied to multi-state non-attainment areas. Or you could argue that any state is ambiguous with respect to multi-state non-attainment areas. So which are you arguing? We argue the former here in that it most squarely addresses the issue before the court. But I think if you were to say that any state is ambiguous with respect to multi-state non-attainment areas, I think EPA's interpretation is nonetheless reasonable and entitled to deference, in that if the statute is unclear as to how Section 181A5 would apply in a multi-state non-attainment area, then that's clearly a reasonable interpretation. I do believe that at the time this legislation was passed, there were multi-state non-attainment areas in existence. Whether or not that sheds all that much light on what Congress intended, I unfortunately don't know. Well, if that's true, then why wouldn't EPA just rely on the plain words, Congress ruled? Well, we think by relying on the word any in any state, they did. And here they also included a requirement that all states in the Philadelphia needed to be in compliance with their EPA-approved SIPs. The court raises a very good question about whether or not that requirement should be read as a requirement of the statute, or whether it should simply be an EPA policy position interpreting its discretionary authority. Here, the position it took during the rulemaking was that it was part of its statutory obligations. And where would I find that? I believe that would be both in the response to comments and in- J.A. 67, Column 1. Right. EPA, however. Yes. It does interpret the provision as required. Yes. So that is how they interpreted the provision. So when I read that, I wondered whether EPA was saying that while one state can apply, and that state must be in compliance with its SIP, it was reading the statute given the broader context to mean we are not going to grant extensions when all the other states are out of compliance with their own SIPs. In other words, that that's part of the discretionary determination that EPA is making. And the statute doesn't tell EPA anything other than who can apply and how many extensions can be granted. No? I think that is certainly a position EPA could have taken and may have if it was challenged on that precise issue. But what they said during the rulemaking was that they believed it was a statutory requirement. A statutory requirement under Subpart 5. Yes, under A5. So you're reading that clause into what EPA said in its preamble. Correct. And I would just note that, for instance, whether or not that was a Chevron Step 1 or Chevron Step 2 decision is a little bit, although I think it would be a Chevron Step 2 decision, it was again not sort of squarely discussed before the agency as all parties involved agreed that all states in a multi-state non-attainment area should be in compliance with their EPA approved SIPs. If there are no more questions. I did have another question. Okay. In response to EPA, to Delaware's comments, where Delaware was complaining about the burden. Let me see where your response is. Your response, or EPA's response, at A110, it's focusing on sort of the regulatory aspect and Delaware's focusing on the burden aspect. So where does EPA respond to Delaware's concern? Other than saying we're enforcing the statute. Well, EPA responds to their concern both in the response to comments and in their final rule explaining what they're doing to enforce Section 110 ATD, the good neighbor provisions under the Clean Air Act. So if you look at A109, EPA expressly acknowledges that what Delaware is concerned is about how the extension would burden the state. Correct. And if you look at EPA's response, what does it say? It says we readily acknowledge the role that interstate transport, etc. We have this regulatory scheme. We've proposed to update the cross state air pollution rule. Delaware says, oh, that's all great. But you haven't addressed our comment. That the effect of this, you say, EPA says it in preamble, too, that this is far different than if we had a reclassification where there would be new burdens imposed. Delaware says the extension is going to result in new burdens being put on us because all this pollution from these other states that haven't done what Delaware thinks they need to do to control their own emissions means that Delaware is going to have to take additional steps to keep its own air as clean as it can be given this additional pollution that's coming in. So where does EPA address that? That's what I'm trying to get at. Well, I think there's a limit to the extent that EPA can address that in these comments because EPA, under the statute, has two options. When it determined that the Philadelphia non-attainment area was not in compliance with the ozone max, it could either bump it up from to- EPA responds to that, okay? It says we're not bumping up, okay? And it says, therefore, there is no increased regulatory burden on any state in the Philadelphia area. Correct. But Delaware says there is going to be an increased regulatory burden on us because these other states are going to have another year to send this pollution to us. Well, I think- So is there any response to that? Well, I think it- Yes, I mean, they do, and I can turn to the final rule. I mean, they can- EPA was able to respond to it, and I will point you to, on appendix page 69, in the middle of the page, EPA addresses Delaware's comment about the good neighbor provisions. Are we in the joint deferred appendix? Yes, we are in the joint deferred appendix, page A069. Right. It's in the middle of page comment. The comment, it says, a number of commenters welcome seating and air quality monitoring data. These commenters allege that EPA has not done enough to enforce Clean Air Act section 1 to 80D, the good neighbor provision. EPA then has a response to that. What does it say? It says that EPA acknowledges the role that interstate pollution plays and that the agency has taken a number of steps to fulfill its obligations. Right. That's the same thing it said at A110. Correct. All right. So it's just saying we know there's interstate transport of pollution. We're working on it. But it just doesn't deal with what Delaware is concerned about, does it? Well, yes and no in that in this rulemaking, EPA had only two options. They could either bump up all of the states, and Delaware made very clear they did not believe they should be bumped up. Or they could deny the extension. That's what Delaware says should have happened. But a denial of the extension is a bump up. It would bump up the states in turning to. And Delaware is fine with that. Well, I think I might disagree in that they stated in their comment letter, Delaware, where they say a bump up is not warranted, and then it goes on to state, you know, EPA had two options, an extension or a bump up. In their letter, they say we don't like the bump up and we don't like the extension. I thought Delaware was arguing you had a third option. There is no third option. Could I just tell you what I think they're saying? Yes, you are. They're saying that in this interim year, you could make further requirements for these SIPs of these other states. If their position is we could grant an extension and then follow up with separate obligations under a state. Remember their request for clarification? They said they wanted clarification that during this one-year period, there would be no stepping back from the requirements under Section 110D2. That's the third option, isn't it? That's not really an option in that. I mean, personally, I think EPA did not step back from its requirements under the good neighbor provision. So I understand that. That is what the response says. So my question is, what did they do? Did they do anything during this interim year? They made no commitment to do anything during this interim year that would protect Delaware from this additional burden it was going to suffer as a result of the extension. And maybe your position is it had no obligation to do so, but that was clearly what Delaware was asking. Well, I guess I would say it's not clear from my reading of the letter that that's actually what they were asking in light of the fact that EPA only had two options, a bump-up and an extension. But you agree, don't you, that a bump-up is different than if EPA were to investigate and find, for example, that New Jersey, at its SIP, which only required two things, really needed to require three things. Because in this additional year, New Jersey was sending additional pollution to Delaware, and Delaware is the good guy in this scenario with New Jersey being the bad guy as far as the pollution is concerned. Well, that's certainly the narrative Delaware presents, but I think the issue is what were the legal issues raised in their petition? So just to be clear, in their comments and their letter, that's what they asked for? Well, to be perfectly honest, in their comments, I'm not entirely clear what they asked for. And I'm sure the Court has read the one-and-a-half-page letter. So here's what it says. Delaware requests that EPA clarify in the final rule that neither a one-year extension nor a finding of attainment impacts any state's obligation to comply with the requirements of CAA 110.A.2.D. And EPA did that. What did it do? In, I believe, page A69 of the... And they said... They discuss... They acknowledge the role that ozone pollution plays for downwind areas. Are you in column one, two, or three? I'm in column two. Okay. And... I see comment. Now you're at the bottom, response? Yes. Okay. So it says, we acknowledge there's a problem. Yeah, and they say that EPA... And as commentators have alluded to. Yes. And we've made this proposal. Mm-hmm. That's it. That's the same thing that's on 110. Yes, I mean, I guess to the... Okay. To the extension that the court is reading this as, if EPA had simply put in the final rule a statement that said, neither a one-year extension nor a finding of attainment impacts any state's obligation to comply with the requirements of CAA 110.A.2.D., I'm not really sure that's the best reading of that letter. So your point would be that before us then, Delaware has to say that what EPA said it was going to do was not satisfactory. That's not what it's saying in its brief, but that would be your position? That EPA said, look, we have these things on the drawing board. We're doing other things. Now it's Delaware's obligation to say, but that doesn't either address our request or our concern. Well, I think what Delaware had to do in this rulemaking is let EPA know whether it supported a bump-up or whether it supported an extension. And in its comment letter, it took sort of both positions, and I think if you were to try to say, as between the two, what did it prefer, I think it probably preferred the extension because they know the burdens a bump-up would have placed on it. So you just reject the notion that there's a third path? Well, I think you could read it as a, again, I do not think this letter is a model of clarity. We all understand that. I just read to you the key statement. Yes, I think that would be another fair reading of the letter. EPA responds to that, and so then Delaware has to say why that response is insufficient, and it hasn't. Well, but I think the question is, you know, maybe conceivably that would make them an agreed party, but it isn't an issue that's properly before this Court. The EPA had two options during the rulemaking. I know you keep telling me that, and I said, what about a third option? And I thought you agreed that if EPA had done an investigation of New Jersey, it might have found that New Jersey's SIP needed to be revised, which is not the same as a bump-up. But, Your Honor, the two issues that were raised in the... All right, take this as a hypothetical. Yes. That that's what the citation to Section 110A2D meant. Well, Your Honor, what I think EPA could have declined to undertake those additional investigatory measures or could have agreed to do so, but the question that was raised in the rulemaking is whether or not it would be arbitrary and capricious for EPA to do so. And I think there's a difference between Delaware essentially saying, you know, we believe that cross-state air pollution is the real culprit here. We think you should address that. And that's a fair thing to say. If the court wants to read that comment as making them an aggrieved party, you know, I understand that position. But I think it's another step to say, therefore, that was a legal challenge to EPA's ability to grant the extension. That issue was not briefed before this court. You know, the issue before this court is whether, you know, EPA could grant the extension upon the request of fewer than all states. All right. Why don't we hear from counsel for Delaware? Thank you. Thank you. Your Honor, Delaware does believe that the alternatives discussed in its letter, in its comments letter, were issuance of the extension year, or if the extension year was not granted, then the automatically bump up. At that point, the extension, the time for attaining the date would have been extended by three years. The states would have had to go back and look at their SIPs. Transport should have been an issue that would be addressed by EPA pursuant to the 110A2D. And it's that process that comes from the bump up that allows for emission reductions to take place. EPA characterized the issuance of the extension year as being the burden that Delaware described. And Delaware was opposed to the issuance of it. It was also opposed to the awful situation that it's in. It was opposed to the timeframe being punted when other states in the area who contributed, in fact, more than Delaware to the nonattainment hadn't done complete SIPs, when Delaware has well controlled all of its sources, and EPA, despite the statutory criteria that the states had to be in compliance, and the way that EPA read it in its rule, EPA read it that all the states had to be in compliance with the requirements of their SIPs, and they point to the definition of SIPs, which include the requirements of the Act. Delaware believes that the EPA did not undertake that scrutiny, did not fix the problem, and that this extension year that they issued that was beyond the limits of the statute causes more problems by alleviating their requirement to do anything. The SIPs don't need to be updated if EPA finds they attain. The RAC requirements won't be implemented, are not required to be implemented, because there's no attainment plan that needs to be given. And that it is the actions of the states who asked for the extension year who caused the issue, who caused it to be another punt. They punted their obligations by not adopting sufficient SIPs, and they tried to punt again by asking for an extension year. And regardless of the way the court reads who has to ask for an extension year, it was not reasonable of EPA to grant it under the circumstances that they have. All right? And the Delaware Department of Natural Resources and Environmental Control, on behalf of the people that it's obliged to protect, thanks you. Well, before I lose the opportunity, let me just ask you, where in your brief is anything about objections at EPA's failure to impose an additional burden on a different state? I didn't understand your question, Your Honor. Is there anything in your brief saying that EPA should have imposed an additional burden on other states or told them to revise their SIPs? If they did not grant the extension year, as a matter of law, the areas would have been reclassified with new deadlines for updated SIPs, and those would have imposed requirements, including the RAC requirements, including the requirements to revise the SIPs. So it's the very act of not granting the extension year that puts the obligations back on the parties where it belongs. Thank you. We'll take the case under advisement.
judges: Rogers, Griffith, Ginsburg